STATE OF NORTH CAROLINA
v.
JAMES ERIC SWINTON, Defendant.
No. COA06-301
North Carolina Court of Appeals
Filed February 20, 2007
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General W. Richard Moore, for the State.
Brian Michael Aus for defendant-appellant.
WYNN, Judge.
Defendant James Eric Swinton appeals from a judgment entered upon his conviction of conspiracy to sell cocaine, aiding and abetting in the sale of cocaine, and possession with intent to sell or deliver cocaine. We find no error.
The State's evidence at trial tended to show that City of Asheville Police Officer Jeffrey Elmo Rollins, a member of the Drug Suppression Unit, was on duty conducting surveillance for drug activity at the Deaver View public housing complex on 9 June 2004. He testified that he regularly met with Deaver View's managers concerning any problems they had within the complex relating to drug dealing. On 9 June 2004, Officer Rollins conducted surveillance from within a vacant apartment at the Deaver View complex while three other officers were in or near the complex to provide assistance. While conducting surveillance, Officer Rollins observed three males in the area near his surveillance location, two of whom approached at least six vehicles and received money in exchange for small, tan-colored rocks. Officer Rollins immediately recognized one of the individuals involved in these transactions as Defendant because he had contact with Defendant on 2 June 2004. Further, he had previously been shown a picture of Defendant and been informed that Defendant was not permitted on the premises.
Officer Rollins also observed a male, later identified as Travis Harvin,[1] give some tan-colored rocks to Defendant. Defendant then exchanged these rocks for money from a suspect in a vehicle that was stopped in front of Officer Rollins's surveillance location. Officer Rollins radioed to the other officers to stop this vehicle and was later informed by the officers that they had recovered five tan-colored rocks from this vehicle. Officer Rollins continued to observe Defendant exchange tan-colored rocks for money for another twenty or thirty minutes after that time. He eventually exited the apartment, ran toward Harvin, and instructed him to get on the ground. Harvin ran away, and Officer Rollins observed him throwing down a paper towel which contained what Officer Rollins believed to be crack cocaine. Officer Rollins apprehended and arrested Harvin. During Officer Rollins's pursuit of Harvin, Defendant ran into an apartment.
Yvonne Johnson, a senior police officer with the Asheville Police Department, testified that she and two other police officers were in the vicinity of the Deaver View complex on 9 June 2004 to provide assistance to Officer Rollins. When Officer Rollins radioed to the officers that he believed he had observed an exchange involving a primer gray vehicle with a red hood occupied by a male, Officer Johnson pulled behind the vehicle as it was leaving the complex and conducted a motor vehicle stop. The other two police officers also pulled up behind Officer Johnson's vehicle for assistance. Officer Johnson searched the vehicle, with the driver's consent, and seized five items that appeared to be crack cocaine and a crack pipe.
Asheville Police Officer Michael Lamb testified he was also in the vicinity of Deaver View on 9 June 2004 to assist Officer Rollins. Officer Lamb assisted Officer Johnson with the vehicle stop of the gray vehicle that resulted in the seizure of five items that appeared to be crack cocaine. Afterwards, he and another officer returned to the Deaver View complex to further assist Officer Rollins with the arrest of Harvin.
Special Agent Jay Pentacuda, a forensic drug chemist assigned to the State Bureau of Investigation (SBI) crime laboratory in Raleigh, testified that he analyzed the suspected controlled substance recovered from the paper towel that Harvin discarded when he saw Officer Rollins and determined it was 2.4 grams of cocaine base. He also analyzed the five rocks recovered by the officers from the vehicle that was stopped at Officer Rollins' request and determined the "off-white solid rock material" to be 0.40 grams of cocaine base.
At his trial, the jury found Defendant guilty of conspiracy to sell cocaine, aiding and abetting in the sale of cocaine, and possession with intent to sell or deliver cocaine. On the same date, Defendant admitted his status as an habitual felon. Defendant was sentenced to two consecutive sentences of 133 to 169 months imprisonment. Defendant appeals, arguing the trial court committed plain error by allowing testimony from law enforcement officers (I) about drug activity at the Deaver View complex, and (II) that they had prior contact with Defendant, in violation of Rule 404(b) of the North Carolina Rules of Evidence.
Preliminarily, we note that "the plain error rule . . . holds that errors or defects affecting substantial rights may be addressed even though they were not brought to the attention of the trial court" and thus were not properly preserved under N.C. R. App. P. 10(b)(2). State v. Cummings, 346 N.C. 291, 313, 488 S.E.2d 550, 563 (1997), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Our appellate courts review such unpreserved issues when specifically assigned as plain error pursuant to N.C. R. App. P. 10(c)(4), "and when the issue involves either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence." Cummings, 346 N.C. at 313-14, 488 S.E.2d at 563. "In order to rise to the level of plain error, the error . . . must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." State v. Holden, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), cert. denied, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998).

I.
Defendant first argues the trial court committed plain error by allowing testimony from Officers Rollins, Johnson, and Lamb characterizing the Deaver View complex as having a large number of drug transactions and complaints about drug activity. Defendant challenges the following testimony elicited from Officer Rollins by the prosecution:
Q. Have you ever observed people conducting drug transactions out in the open in Deaver View or Pisgah View?
A. Yes.
Q. How often?
A. Every day.
Q. June the 9th-Well, do you work alone? Were you in a patrol car on June the 9th the [sic] '04?
Can you describe for the jurors how you started your day and what you had planned to do that day?
A. The apartment managers had discussed with us problems concerning drug dealing on the lower end of the Deaver View Projects near the 25, 26, 27, 28 and 29 Building.
Officer Rollins further testified:
This is Deaver View Road right here [on State's Exhibit 1]. This is the complex of Deaver View Apartments. We generally refer to this side as the top side, and this the bottom side. This is where we had recently received complaints of drug activity.
Defendant also challenges the following testimony of Officer Johnson:
Q. Did you ever receive complaints from the citizens in Deaver View regarding drug activity there?
A. Yes.
Q. How often?
A. Daily, from the time that I was sworn into the Asheville Police Department.
On direct examination, Officer Lamb testified he was part of the Asheville Community Enforcement Team, and their primary areas of responsibility were Pisgah View and Deaver View Apartments. Defendant challenges the following testimony of Officer Lamb elicited by the prosecution:
Q. Why Pisgah View and Deaver View Apartments?
A. That seemed to be where most of the citizens' complaints were generated from as far as the heaviest open area drug activity.
When asked to describe what he was doing on 9 June 2004, Officer Lamb testified as follows:
On June the 9th, 2004, I was working with Officer Rollins, Officer Green, and Officer Johnson. That afternoon we had conducted a plan to address citizens' complaints of drug activity in Deaver View Apartments. The plan was that we wereAll four of us were to do regular foot patrol as we usually did in Deaver View Apartments. It's not to alarm anybody in the community. And so we set up  Normally, two vehicles came in, two officers in each vehicle.
We parked on the top side of Deaver View. . . . We walked down to the 28 Building, the lower half of Deaver View Apartments, and let ourselves be known so that drug dealers that were standing out in the open would go inside.
Finally, Defendant challenges the following testimony of Officer Lamb:
Q. You and your fellow officers receive complaints from the citizens in Deaver View regarding drug activity?
A. Yes, daily.
Defendant did not object to the above testimony at trial and thus asks this Court to review its admission for plain error. Defendant contends the officers' testimony constituted inadmissible hearsay evidence about the reputation of the Deaver View complex. For the reasons set out below, we agree with the State's arguments that this general rule does not mandate that Defendant receive a new trial.
It is well established that "in a criminal prosecution evidence of the reputation of a place or neighborhood is ordinarily inadmissible hearsay." State v. Weldon, 314 N.C. 401, 408, 333 S.E.2d 701, 705 (1985); see also State v. Williams, 164 N.C. App. 638, 644, 596 S.E.2d 313, 317 ("[T]he trial court erroneously allowed the admission of testimony regarding the reputation of the Freeman and Martin Street area of Raleigh, North Carolina."), disc. review denied, 358 N.C. 738, 600 S.E.2d 857 (2004).
Nevertheless, "if a statement is offered for any purpose other than that of proving the truth of the matter asserted, it is not objectionable as hearsay." State v. English, 171 N.C. App. 277, 284, 614 S.E.2d 405, 410 (2005) (holding that an officer's testimony regarding a neighborhood's reputation was not hearsay and was admissible where it was prompted by a question by the prosecution as to why the officer was in the neighborhood and was offered to explain why the officer subsequently solicited drugs from a pedestrian in that neighborhood) (citation omitted). Here, the officers' testimony concerning the complaints they had received about drug activity occurring at the Deaver View complex explained why the officers were at the complex conducting drug surveillance on 9 June 2004. Thus, the testimony was not hearsay and was admissible.
Second, even if the officers' testimony was in fact inadmissible hearsay and was therefore allowed in error, Defendant has failed to show the admission of this testimony amounted to plain error. Indeed, the State presented substantial evidence that Defendant possessed cocaine, conspired to sell cocaine, and aided and abetted in the sale of cocaine, separate and apart from the admitted testimony. Therefore, the testimony concerning the complaints of drug activity received by the officers was not critical to the State's evidence against Defendant, and Defendant has failed to show the jury would probably have reached a different result had the trial court barred these statements. Moreover, in reviewing the record, we conclude any such error would not constitute a miscarriage of justice. Accordingly, we hold the trial court's admission of the testimony concerning the drug activity at the Deaver View complex did not rise to the level of plain error.

II.
Defendant also contends the trial court committed plain error by allowing Officers Rollins and Lamb to testify that they had prior contact with Defendant, in violation of Rule 404(b) of the North Carolina Rules of Evidence, which provides in relevant part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2006). Our Supreme Court has held that Rule 404(b) is a rule of inclusion.State v. Lloyd, 354 N.C. 76, 88, 552 S.E.2d 596, 608 (2001) (citing State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)).
Defendant argues the following testimony of Officer Rollins constituted impermissible character evidence by implying that Defendant had committed prior bad acts:
Q. Did you recognize any of the individuals that you saw conducting these [drug] transactions?
A. Yes, sir.
Q. How many did you recognize?
A. One.
Q. All right. And whom did you recognize?
A. Mr. Swinton.
Q. When you first saw the Defendant, did you immediately recognize him, or did you have to think about it?
A. Immediately recognized him.
Q. Were you familiar with this Defendant?
A. Yes, sir.
Q. Had you had prior contact with him prior to June the 9th, 2004?
A. Yes, sir, I had contact with him seven days prior on June 2nd.
Defendant further argues the following testimony of Officer Lamb constituted impermissible character evidence:
Q. Were you familiar with Mr. Swinton prior to June the 9th, 2004?
A. Yes, I had one prior dealing with him by the 2 Building of Deaver View Apartments a couple of months earlier.
Defendant did not object and asks for a plain error review.
The State argues that no specific information was given by Officer Rollins as to the nature of his "prior contact" with Defendant. Further, the State asserts the testimony of these officers was presented for the purpose of explaining the officers' identification of Defendant. Indeed, Rule 404(b) allows evidence of other acts as proof of identity or absence of mistake. Accordingly, the State argues the trial court did not commit plain error by allowing the officers' testimony. We agree with the State and conclude Defendant's argument is without merit.
No error.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
NOTES
[1] The trial transcript refers to this individual as Travis "Harbin."