DIETZ, Judge.
 

 *652
 
 Defendant Virginia Lee Loftis appeals her convictions for trafficking in methamphetamine, possession of methamphetamine, and maintaining a dwelling place for keeping and
 
 *649
 
 selling controlled substances. Her
 
 *653
 
 two arguments share a common theme-an effort to shift the responsibility to preserve arguments and build an appellate record away from defense counsel and onto the trial court.
 

 We reject these arguments. Loftis first contends that the trial court erred by failing, on its own initiative, to conduct a voir dire hearing to confirm that Loftis's incriminating in-custody statements to law enforcement were knowing and voluntary. But Loftis did not move to suppress those statements-either before or during trial. Thus, the trial court properly overruled her objection to the admission of those statements without conducting a hearing (which Loftis never requested) because her constitutional challenge to admissibility was procedurally barred.
 

 Loftis next contends that the trial court failed to personally discuss with her the consequences of stipulating to the admissibility of a forensic laboratory report, which waived her right to confront the forensic expert who performed the analysis. As explained below, when a stipulation to the admissibility of evidence is, in effect, a confession of guilt, the trial court must address the defendant directly. But where, as here, the stipulation was not an admission of guilt, and left the defendant free to assert that the State had not met its burden of proof on other grounds, the obligation to inform the defendant of the consequences of waiving Confrontation Clause rights rests with defense counsel. Accordingly, the trial court did not err by accepting the stipulation-made by Loftis's counsel in her presence in open court-without first addressing Loftis directly and discussing the consequences of that stipulation.
 

 Facts and Procedural History
 

 On 7 April 2016, law enforcement executed a search warrant at a mobile home in McDowell County where Defendant Virginia Loftis was present with her boyfriend, Franklin Barlow. An officer placed Loftis in handcuffs and read Loftis her
 
 Miranda
 
 rights.
 

 Officer Shane Vance then asked Loftis where the drugs were in the house and Loftis responded that she would tell him in exchange for a cigarette. Officer Vance gave Loftis a cigarette and she showed officers where to find the drugs. Based on the information from Loftis, officers recovered plastic bags containing a "crystal white substance" from inside a camera bag, along with drug paraphernalia, including plastic baggies and a smoking device. Officers also found a pink diary containing what appeared to be a ledger of drug transactions.
 

 While Loftis was being held in detention following the search, she asked to speak with law enforcement. Lieutenant Chris Taylor and Agent
 
 *654
 
 Jackie Turner responded to her request. The officers again read Loftis her
 
 Miranda
 
 rights. Loftis waived her
 
 Miranda
 
 rights. Loftis then told the officers that the names in the pink diary "were the names of the people that owed her money for methamphetamine." Loftis also described traveling to Asheville to "meet with her source of methamphetamine" and purchasing "at least two to three ounces of methamphetamine every three days."
 

 Law enforcement submitted the seized substance to the SBI laboratory for forensic chemical analysis. An SBI analyst determined that the substances recovered during the search contained methamphetamine and weighed 40.81 grams.
 

 On 18 June 2016, the State indicted Loftis for trafficking in methamphetamine, possession of methamphetamine with intent to sell or deliver, and maintaining a dwelling for keeping and selling methamphetamine. Loftis did not make a pretrial motion to suppress any evidence and her case went to trial on 4 December 2017.
 

 At trial, Loftis's counsel stipulated to the admission of the forensic laboratory report in open court, in Loftis's presence, which meant the State would not need to call the forensic expert who performed the analysis.
 

 On 6 December 2017, the jury convicted Loftis of trafficking in methamphetamine, maintaining a dwelling place for keeping and selling controlled substances, and the lesser-included offense of possession of methamphetamine. The trial court sentenced Loftis to 70 to 93 months in prison and a $50,000 fine for the trafficking charge. The trial court consolidated the two remaining charges and
 
 *650
 
 imposed a consecutive sentence of 120 days. Loftis gave oral notice of appeal.
 

 On 7 December 2017, the trial court resentenced Loftis on the two consolidated charges to correct its judgment to reflect that possession of methamphetamine is a Class I felony carrying a sentence of 6 to 17 months in prison. Loftis did not give notice of appeal following resentencing.
 

 Analysis
 

 I. Petition for a Writ of Certiorari
 

 Loftis petitions this Court for a writ of certiorari in connection with this appeal because, although she gave timely notice of appeal after her initial sentencing, she failed to give notice of appeal following her resentencing and the entry of the corrected judgment the following day. This Court has discretion to issue a writ of certiorari to review issues for which the right to appeal was lost by failure to take timely action.
 

 *655
 

 State v. Bishop
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 367
 
 , 369 (2017). Because Loftis's actions indicate an unmistakable intent to appeal that was lost solely because of the failure to timely act, we exercise our discretion and allow the petition for a writ of certiorari. N.C. R. App. P. 21.
 

 II. Challenge to Admission of Custodial Statements
 

 Loftis first argues that the trial court violated her Fifth, Sixth, and Fourteenth Amendment rights by admitting incriminating custodial statements she made to law enforcement without first conducting a hearing outside the presence of the jury to ensure that Loftis knowingly and voluntarily waived those rights.
 

 Loftis acknowledges that she did not move to suppress the statements at any time in the trial court. Likewise, she acknowledges that she never asked for a hearing from the trial court-her counsel said the word "objection" when the State first asked about those statements and, when the trial court immediately overruled the objection, counsel said nothing more.
 

 Nevertheless, Loftis argues on appeal that the trial judge "abdicated his constitutional duty to ensure that improperly obtained statements do not reach the jury" by failing, on the court's own initiative, to stop the trial, excuse the jury, and conduct a hearing on the voluntariness issue. We reject this argument.
 

 Loftis relies on a series of cases from the early 1970s holding that a defendant's incriminating statements while in custody "when offered by the State as substantive evidence and objected to by defendant are not admissible until after a voir dire hearing in the absence of the jury" where the court addresses the voluntariness issue on the record.
 
 State v. Gregory
 
 ,
 
 16 N.C. App. 745
 
 , 748,
 
 193 S.E.2d 443
 
 , 446 (1972). But this line of cases arose before the Criminal Procedure Act in 1973, which requires these constitutional challenges to be pursued in a timely motion to suppress.
 
 See
 
 N.C. Gen. Stat. § 15A-979(d). Although some of the cases cited by Loftis came after the General Assembly enacted Section 15A-979(d), those cases did not acknowledge the procedural requirement to move to suppress or the language in Section 15A-979(d) making the motion to suppress "the exclusive method of challenging the admissibility" of this type of evidence.
 

 Then, in the early 1980s, this Court again addressed a defendant's argument that the trial court "committed prejudicial error in admitting [an incriminating in-custody] statement without establishing that he understood and waived his constitutional rights."
 

 *656
 

 State v. Conard
 
 ,
 
 54 N.C. App. 243
 
 , 244,
 
 282 S.E.2d 501
 
 , 503 (1981). We held that this argument was procedurally barred because the defendant failed to move to suppress the statement. We explained that "defendant made no motion to suppress, and his general objection was not accompanied by any allegation of a legal basis for suppressing the evidence. It follows therefore that the trial judge had statutory authority to summarily deny defendant's objection."
 
 Id.
 
 at 245,
 
 282 S.E.2d at 503
 
 .
 

 Since
 
 Conard
 
 , this Court repeatedly has held that objections to use of a defendant's in-custody statements were procedurally barred because the defendant failed to make a timely motion to suppress.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 State v. Armstrong
 
 ,
 
 165 N.C. App. 544
 
 ,
 
 600 S.E.2d 899
 
 (2004) (unpublished);
 

 *651
 

 State v. Wilkins
 
 ,
 
 203 N.C. App. 741
 
 ,
 
 693 S.E.2d 281
 
 (2010) (unpublished);
 
 State v. Reavis
 
 ,
 
 207 N.C. App. 218
 
 , 223,
 
 700 S.E.2d 33
 
 , 37 (2010). In
 
 Reavis
 
 , for example, this Court held that a defendant who objected at trial but did not show that "the State failed to disclose the evidence of his interview or statement in a timely manner" had waived this constitutional challenge because the defendant "failed to bring himself within any of the exceptions to the general rule. ... Thus, defendant's objection at trial to the admissibility of the evidence is without merit because the objection, treated as a motion to suppress, was not timely made."
 

 Id.
 

 This line of cases is consistent with our Supreme Court's precedent, which also repeatedly has held that these types of constitutional challenges must be brought in a timely motion to suppress.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 State v. Miller
 
 , --- N.C. ----, ----,
 
 814 S.E.2d 81
 
 , 83 (2018). Here, Loftis did not move to suppress before trial and does not assert on appeal that any exception applied to permit her to move to suppress during trial. "When no exception to making the motion to suppress before trial applies, failure to make the pretrial motion to suppress waives any right to contest the admissibility of the evidence at trial on constitutional grounds."
 
 State v. Detter
 
 ,
 
 298 N.C. 604
 
 , 616,
 
 260 S.E.2d 567
 
 , 577 (1979). Accordingly, the trial court properly overruled Loftis's objection as procedurally barred.
 

 III. Stipulated Admission of Forensic Laboratory Report
 

 Loftis next argues that the trial court committed plain error by admitting a forensic laboratory report, after Loftis stipulated to its admission, because the trial court failed to engage in a personal colloquy with Loftis "ensuring that Ms. Loftis personally waived her 6th amendment right to confront the chemist" whose testimony otherwise would be necessary to admit that report.
 

 *657
 
 "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). Plain error should be "applied cautiously and only in the exceptional case" where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."
 
 Id.
 
 at 516-17,
 
 723 S.E.2d at 333
 
 . As explained below, the trial court did not err, and certainly did not plainly err, by admitting the lab report.
 

 This Court has held that "the waiver of Confrontation Clause rights does not require the sort of extensive colloquy needed to waive the right to counsel or enter a guilty plea."
 
 State v. Perez
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 612
 
 , 615 (2018). In
 
 Perez
 
 , the defendant and his counsel "signed written stipulations to admit the lab reports without the requirement that they be accompanied by witness testimony."
 

 Id.
 

 Perez argued "that the trial court erred by permitting him to stipulate to the admission of the forensic laboratory reports without engaging in a colloquy to ensure he understood the consequences of that decision."
 

 Id.
 

 at ----,
 
 817 S.E.2d at 614
 
 . This Court rejected Perez's argument and found no error, expressly declining Perez's "request to impose on the trial courts an obligation to personally address a defendant whose attorney seeks to waive any of his constitutional rights via stipulation with the State."
 

 Id.
 

 We further noted that if a defendant "did not understand the implications of stipulating to the admission of the lab reports at trial, his recourse is to pursue a motion for appropriate relief asserting ineffective assistance of counsel."
 

 Id.
 

 at ----,
 
 817 S.E.2d at 615
 
 .
 

 Loftis attempts to distinguish
 
 Perez
 
 by arguing that the case involved a written stipulation personally signed by the defendant, while this case involves an oral stipulation by defense counsel made in the defendant's presence. This is a distinction without a difference. The
 
 Perez
 
 holding is based not on the form of the stipulation (oral versus written) but on the subject matter of the stipulation. As this Court has held (in a case, somewhat confusingly, also captioned
 
 State v. Perez
 
 ), a stipulation that amounts to a "concession of guilt" requires the trial court to confirm with the defendant that "he had discussed the concession with his counsel and had authorized it, and the defendant thereafter acknowledged that his counsel had made the argument desired by him."
 

 *652
 

 State v. Perez
 
 ,
 
 135 N.C. App. 543
 
 , 548,
 
 522 S.E.2d 102
 
 , 106 (1999). The reason for this rule, as
 
 Perez
 
 explains, is that this type of stipulation during trial "has the same practical effect as a guilty plea, because it deprives the defendant of his right against self-incrimination, the right of confrontation and the right to trial by jury."
 
 Id.
 
 at 547,
 
 522 S.E.2d at 106
 
 .
 

 *658
 
 By contrast, in the more recent
 
 Perez
 
 decision, and in this case, the stipulation is to the admissibility of a piece of incriminating evidence that does
 
 not
 
 amount to an admission of guilt. Here, for example, Loftis's central theory of the case was that the State failed to prove she possessed the illegal drugs, which were found in a mobile home occupied by both Loftis and her boyfriend. Thus, stipulating to the admission of the report was not the equivalent of a guilty plea; Loftis continued to present her case and contend, at oral argument, that the State had not met its burden of proof. And, as we observed in
 
 Perez
 
 , there are many strategic reasons why a defendant like Loftis might benefit from stipulating to a forensic report confirming a seized substance was illegal drugs-most obviously to avoid having the State call a credible forensic expert to discuss the testing in detail and potentially distract the jury from the key points of the defense case.
 
 Perez
 
 , --- N.C. App. at ----,
 
 817 S.E.2d at 615
 
 .
 

 Accordingly, we once again decline to impose on the trial courts a categorical obligation "to personally address a defendant" whose counsel stipulates to admission of a forensic report and corresponding waiver of Confrontation Clause rights. That advice is part of the role of the defendant's counsel. The trial court's obligation to engage in a separate, on-the-record colloquy is triggered only when the stipulation "has the same practical effect as a guilty plea."
 
 Perez
 
 ,
 
 135 N.C. App. at 547
 
 ,
 
 522 S.E.2d at 106
 
 . Accordingly, we find no error, and certainly no plain error, in the trial court's admission of the forensic laboratory report upon the oral stipulation of Loftis's counsel, in her presence, in open court.
 

 Conclusion
 

 We find no error in the trial court's judgments.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge DAVIS concur.
 

 Judge Davis concurred in this opinion prior to 25 March 2019.